```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
MARIE GUERRERA TOOKER,

                        Plaintiff,
                                                        REPORT AND
        -against-                                       RECOMMENDATION
                                                        CV 17-6006 (JS)(ARL)
TOWN OF SOUTHAMPTON, ROBERT PEARCE,
Southampton Town Former Police Chief, individually
and in his official capacity, JOHN GIAMBONE,
Southampton Town Police Officer, individually and
in his official capacity, TODD SPENCER, Southampton
Town Sergeant, individually and in his official capacity,
KALB, Southampton Town Police Sergeant,
individually and in his official capacity, K. GLOGG,
Southampton Town Investigator, individually and
in his official capacity, THOMAS J. SPOTA, individually
and in his official capacity, SUFFOLK COUNTY DISTRICT
ATTORNEY, and JOHN and JANE DOES 1-20,

                        Defendants.
----------------------------------------------------------------X
```

**LINDSAY, Magistrate Judge:**

Before the Court, on referral from District Judge Seybert, are the motions of the defendants, the Town of Southampton, former Southampton Police Chief Robert Pierce, Officer John Giambone, Sergeant Todd Spencer, Sergeant Kalb, and Investigator K. Glogg (the "Town defendants") and the Suffolk County District Attorney Thomas Spota and John and Jane Does 1– 20 (the "County defendants"), to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(4) and (6). For the reasons set forth below, the undersigned respectfully recommends that both motions be granted. The undersigned further recommends that the plaintiff be directed to show cause, in writing, as to why she should not be barred from filing future complaints without leave of a court.

## BACKGROUND

The *pro se* plaintiff, Marie Guerrera Tooker ("Tooker"), who is no stranger to litigation, commenced this action on October 13, 2017, stemming from her arrest in the Village of Southampton on October 13, 2014. ECF No. 1.[1] In her complaint, Tooker asserts numerous claims, including: Fourteenth Amendment due process and equal protection violations, malicious prosecution, unreasonable search and seizure, excessive force, sexual assault, false arrest, false imprisonment, intentional infliction of emotional distress and negligence. Tooker seeks punitive and compensatory damages in excess of $3,000,000.

### A. Factual Averments

In or about 1999, Tooker, a self-proclaimed "philanthropist" and "whistleblower of the drugs in the streets of Flanders," began housing the poor and the homeless at her home located at 1040 Flanders Road, Flanders, New York. Tooker claims that the defendant Town of Southampton ("Southampton" or "Town") was happy to have someone take on responsibility for providing affordable housing in the Town. Yet, Tooker asserts that a drug and prostitution ring abetted by the "Suffolk County Crime Family," consisting of the District Attorney's Office the Town and the Southampton Town Police operated from this property. Tooker asserts that she feared for her safety and had to be silent about "the drugs" because of the alleged involvement of Southampton police officers. Nevertheless, despite her concern, at some point, she sought to evict an unidentified person from her property to protect her family.

In 2001, when real estate prices skyrocketed, Tooker rented her home to Suffolk County

---

[1] The plaintiff's complaint does not utilize numbered paragraphs. Instead, Tooker assigned each line in her complaint a number as one might find on a deposition transcript. The Court will not be utilizing that number system in its citations for fear of confusion. Nonetheless, the facts have all been drawn from the complaint, together with "documents incorporated in it by reference" and "document[s] upon which the complaint heavily relies," and are taken as true for purposes of deciding the instant motion. *In re Thelen LLP*, 736 F.3d 213, 219 (2d Cir. 2013).

2

to be used by a not-for-profit agency called "[N]ever [A]lone [N]ever [A]fraid." Never Alone Never Afraid's mission is to care for the underprivileged and homeless. Tooker claims that after she rented her home to the agency, Southampton got mad and retaliated by issuing her code violations. Ultimately, Tooker reached a settlement with respect to those code violations in the bankruptcy court.

Tooker does not describe a single incident in the complaint that takes place between 2001 and 2009. Tooker's allegations pick up nine years later when she says that David DeRosa from Directional Lending LLC claimed rights to her property and arranged for a receiver to be appointed.[2] Tooker alleges, in this regard, that the receiver, who was assigned by the Court, had a relationship with the people living on her property, and directed them to destroy the property so that she would be issued further code violations. In addition, Tooker claims that the Court's control of the property from 2010 onward prevented her from protecting the premises from code violations and prevented the government from prosecuting anyone for the ongoing drug and prostitution ring.

On October 13, 2014, four years after Directional Lending claimed its right to the property, Tooker called the state police because Joseph Califano ("Califano"), who Tooker says

---

[2] Although Tooker's allegations regarding DeRosa are far from clear, according to the complaint filed by Tooker in another action, *see Tooker v. Guerrera*, No. 15-CV-2430(JS)(ARL), 2017 WL 3475994, at *1 (E.D.N.Y. Aug. 11, 2017), the property was the subject of 2008 foreclosure action commenced against several corporations of which Tooker was the sole owner. It appears that the mortgaged premise was ultimately sold pursuant to a judgment of foreclosure and sale, and a deficiency judgment was entered against Tooker and her three corporations. In 2014, Tooker attempted to vacate the judgment of foreclosure unsuccessfully. Thereafter, she commenced, at least two separate state court actions against various participants in the foreclosure action. She also commenced the 2015 RICO action, in which she accuses the defendants, including DeRosa, of engaging in a pattern of racketeering activity that included "kickbacks, bribery, aiding and abetting, witness tampering and fraud" as well as "[e]xtortion, robbery, bribery, attempted kidnapping, tampering with a witness and obstructing justice" all designed to steal her property.

was squatting at the property, stole her wood.³ The defendant, Police Officer John Giambone ("Giambone"), responded to her call. Tooker claims "Giambone was rude and nasty and threated to put [her] in jail" because she was upset that they would not arrest Califano. Two hours later, some unidentified defendants came back to the house with the Southampton Town Investigator, K. Glogg ("Glogg"), and tricked her into walking outside her home by saying they wanted to inspect the building. Tooker claims that when she got outside, Giambone advised her that she was being placed under arrest and let her go back inside for her shoes. Tooker asserts that when she opened the door to get her shoes, both officers pushed her to the ground, beat her up and tried to Taser her in front of her children. Tooker further claims that Giambone did not advise her of her rights but he did say "you should have kept your mouth shut."

When Tooker arrived at the Southampton jail, an unidentified female police officer frisked Tooker for three minutes, an action which she characterizes as sexual assault. Tooker also says she asked for and was denied medical assistance at the jail. Tooker was then advised that she was being arrested on a bench warrant connected to the money she owed for various code violations. Tooker stated that she had paid $8000 to settle the code violation as part of her bankruptcy proceeding and urged the officer to check "PACER" to verify her story.

Tooker was held at the Southampton jail overnight until her arraignment the following morning before Judge Wilson. When she appeared before Judge Wilson, Tooker repeated that she had already paid the Town $8000, but the judge said she needed to come up with $14,250 or she would be sent to the county jail. Tooker asserts that she would have been killed at the county jail given that fact that she was a witness to the Town's "assisting drugs in the Flanders

---

³ The allegations suggest that Tooker was still living at the Flanders Road property despite the foreclosure proceeding.

4

community."   Accordingly, she called her ex-husband who came to the court within an hour with the money.   Tooker claims when an unidentified officer found out she came up with the money, he started yelling because "[she] was interfering with their plan to hurt [her]."  Tooker replied "[W]hat's the matter God put a little glitch in your plan, you knew I had no money you had no idea that someone would come and save me, a miracle from God."   Tooker claims that when she left the court she immediately got medical attention and documented the wounds she had received.

In sum, Tooker contends that the bench warrant was a fraudulent document used to threaten her and protect a drug and prostitution ring because she was a whistleblower.   In support of this contention, she points to the fact that the police officers did not immediately arrest her when they responded to the call about Califano.   Tooker further asserts that, on the day she was arraigned, she went back to the court with proof that she didn't owe $14,250 and the money was returned to her a week later.   Tooker states that despite the fact that "[t]he court, the town, [and] the Suffolk County District Attorney's Office all [knew] that the arrest was false, . . . the warrant was a fraud, and that there be no way that [she] could be charged with resisting arrest," the Suffolk County DA, nevertheless, chose to prosecute her for almost 2 years.   In June 2016, the case was dismissed in her favor.   Tooker says that the drug and prostitution ring continued at her property until February 2016.

### B. Procedural History

As previously indicated, Tooker filed the complaint in this action on October 13, 2017.  However, by late November, there was no indication on the docket that the complaint had been served.   In fact, according to an internal staff note that was placed on the file, Tooker failed to submit the necessary summonses when she filed the complaint in October.   Accordingly, on

5

November 28, 2017, Judge Seybert issued an order advising Tooker that she was required to effectuate service by January 11, 2018, or to show cause as to why service had not been effectuated. On January 10, 2018, the eve of the deadline, Tooker prepared eight summonses for the Clerk of the Court's signature. See ECF No. 5. Utilizing the Court's standard two-page summons, Tooker filled in the caption "Marie Guerrera Tooker v. "See Rider." She then attached a copy of the caption from her complaint to each of the summonses with the handwritten note "Rider" on the copied page. However, she did list a defendant's name and address on each of the summons.

The following week, Tooker filed eight affidavits of service with the Court indicating that she had served the defendants. The first two affidavits of service reflect service on the County defendants. ECF Nos. 6, 7. Tooker served the defendant, Thomas J. Spota ("Spota"), and the "Suffolk County District Attorney" on January 10, 2018, by service on Debbie Harrison at the Suffolk County District Attorney's Office, an office that Tooker claims was designated by law to accept service for both defendants. The bulk of the affidavits of service appears to have been completed by Tooker; however, the affidavits are signed by "Mariel Bernhardt" and are notorized by 'Bret Evans." Although Spota was the District Attorney ("DA") when Tooker was arrested in 2014, he was no longer the DA on the date of service. Accordingly, Spota contends that he was not properly served.

The next six affidavits of service indicate service on each of the Town defendant by serving "Linda Marzano ("Marzano")," who was employed by the Town Clerk's office. ECF Nos. 7-13. Although Tooker similarly checked the box on each of the affidavits indicating that Marzano was designated by law to accept service for all the Town defendants, they also dispute the adequacy of service with respect to the individual defendants. As such, the Town

6

defendants argue in their motion to dismiss that the Court lacks personal jurisdiction over the former Southampton Police Chief Robert Pierce ("Pierce"), Giambone, Sergeant Todd Spencer ("Spencer"), Sergeant Kalb ("Kalb"), and Glogg.  In addition, the defendants all argue that the claims must be dismissed for failure to state a claim.

## DISCUSSION

### A. Insufficient Process

The Court begins its analysis by addressing the arguments concerning the adequacy of service on the individual Town defendants and Spota.  As a threshold matter, the Court notes that the Town defendants' preliminary statement suggests that they are seeking to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(4).  Town Defs.' Mem. at 1.  "Rule 12(b)(4) pertains to [the] 'form of the process rather than the manner or method of its service.'" *Tooker v. Guerrera*, No. 15-CV-2430(JS)(ARL), 2016 WL 4367956, at *2 (E.D.N.Y. Aug. 15, 2016) (citing *Jackson v. City of N.Y.*, No. 14-CV-5755, 2015 WL 4470004, at *4 (S.D.N.Y. Jun. 26, 2015)).  "[T]herefore, a Rule 12(b)(4) motion is proper only to challenge noncompliance with the provisions of [Federal Rule of Civil Procedure] 4(b) or any applicable provision incorporated by Rule 4(b) that deals specifically with the content of the summons.'" *Id.*  Although the Town defendants advise that the summonses were served on them without the third page "Rider," their memorandum makes clear that they are primarily challenging the sufficiency of service pursuant to Rule 4(e) and (m).  The County defendants are also challenging the sufficiency of service.  Their argument addresses Federal Rules of Civil Procedure 4(c)(1) and (e).  Rule 4(c)(1) provides:

> A summons must be served with a copy of the complaint. The plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m) and must furnish the necessary copies to the person who makes service.

7

Fed. R. Civ. P. 4(c).  Accordingly, the Court has treated this branch of the parties' motions as motions pursuant to Federal Rule of Civil Procedure 4(e) and (m).

Federal Rule of Civil Procedure 4(e) provides that service may be made by either:

(1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or

(2) doing any of the following:

(A) delivering a copy of the summons and of the complaint to the individual personally;

(B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or

(C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e).  New York state law provides that personal service on an individual may be made by four methods: (1) delivering the summons to the defendant; (2) delivering the summons to a person of suitable age and discretion at the place of business, home, or "usual place of abode" of the defendant and mailing the summons to the defendant's last known residence or place of business; (3) delivering the summons to the defendant's agent for service of process; and (4) where service by the first two methods cannot be made with "due diligence," affixing the summons to the door of the defendant's actual place of business, home, or "usual place of abode," and mailing the summons to the defendant's last known residence or place of business. N.Y. CPLR § 308 (1)-(4).

In this case, Tooker attempted service on Pierce, Giambone, Spencer, Kalb and Glogg by leaving the summonses and complaint with the Town Clerk, which the defendants correctly argue was inadequate.  The Town Clerk was not designated by law to accept service on behalf

8

of the police officers or the Town Investigator. Nor was the Town Clerk's Office the actual place of business for the individual Town defendants. Moreover, there is no indication that a copy of the summons and complaint was mailed to any of the individual Town defendants as required under N.Y. CPLR § 308 (2). Accordingly, service was never effectuated on the individual Town defendants. *Carl v. City of Yonkers,* No. 04 CIV. 7031 (SCR), 2008 WL 5272722 (S.D.N.Y. Dec. 18, 2008), aff'd, 348 F. App'x 599 (2d Cir. 2009) (the plaintiff's service of nine copies of the summons and complaint on Corporation Counsel did not amount to proper service on the individually named police officers because Corporation Counsel could only accept service on behalf of the City of Yonkers).

The same is true for Spota. Tooker served Spota with a copy of the summons and complaint at the Office of the Suffolk County District Attorney at Building 77, Hauppauge, New York, 11788. But Spota was no longer the DA, and thus, the District Attorney's Office was not designated to accept service on his behalf. Nor was it his actual place of business. Tooker did not attempt any other method of service upon Mr. Spota and there is no evidence in the record that she attempted to mail a copy of the complaint to his home or office. Accordingly, Tooker has also failed to establish proper service on Spota.

Given the undersigned's determination that both Spota and the individual Town defendants were not properly served, the Court must now turn its attention to Federal Rule of Civil Procedure 4(m), which provides:

> If a defendant is not served within 90 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m). Although the statute contemplates a dismissal without prejudice, the

9

Second Circuit has held that where good cause is lacking, it is not an abuse of discretion to dismiss a case even when the result of the dismissal in combination with the statute of limitations is effectively a dismissal with prejudice. However, in such instances, the district court must weigh the impact that the dismissal or the extension would have on the parties. *See Zapata v. City of New York,* 502 F.3d 192, 197 (2d Cir. 2007) ('[W]e owe deference to the district court's exercise of discretion whether or not it based its ruling on good cause.").

While the Second Circuit has not set forth a mandatory procedure to evaluate good cause in these cases, courts often consider "(1) the reasonableness and diligence of plaintiff's efforts to serve process, and (2) the prejudice to the defendants from the delay." *Fowler v. City of New York,* No. 13-CV-2372 (KAM)(RML), 2015 WL 9462097, at *5 (E.D.N.Y. Dec. 23, 2015). In addition, "[g]ood cause is generally found only in exceptional circumstances where the plaintiff's failure to serve process in a timely manner was the result of circumstances beyond [his or her] control." *Id.* (citing *Beauvoir v. U.S. Secret Serv.*, 234 F.R.D. 55, 56 (E.D.N.Y. 2006)). Here, Tooker has failed to articulate any exceptional circumstances warranting a finding of "good cause." To begin with, Tooker filed this complaint on the last possible date to do so before the three-year statute of limitations expired. In addition, in her haste, Tooker failed to provide the Court with the summonses she needed to effectuate service. Yet, Tooker made no effort to obtain those summonses until she received the Order to Show Cause notifying her that January 11, 2018 was the absolute deadline for service. Indeed, even with the threat of a dismissal looming, Tooker made no effort to obtain the summonses until the day before that deadline. Then, on the last day possible to effectuate service, she had her process server leave all the Town defendants' summonses and complaints at the Town Clerk's Office and the County defendants' summonses and complaints at the District Attorney's Office.

Moreover, under different circumstances, the undersigned would have considered the fact that *pro se* plaintiffs are often unfamiliar with service requirements. However, Tooker has been involved in numerous lawsuits in this district and in at least one case was educated by the Court as to the requirements for service. *See Tooker v. Guerrera*, No. 15-CV-2430(JS)(ARL), 2016 WL 4367956, at *4 (E.D.N.Y. Aug. 15, 2016) (setting forth the permissible methods of service under CPLR Section 308). In addition, Tooker has not offered a satisfactory excuse for her failure in her opposition papers. Indeed, in her memorandum, Tooker's response to the County's challenge is that "[t]he Suffolk County District Attorney's office is tainted with corruption [and] . . . Thomas Spota is running a criminal enterprise." Pl.'s Opp. ¶ 2. She further asserts:

> Service was accepted at the Suffolk County DA office after the Suffolk County attorney's office wouldn't accept it. The DA office first refused sent us to police department, after second time they said they would accept service. The average person cannot possibly know Tom Spota's personal address and would never go to his home anyway. If under the color of law, he is seeking revenge than going to his home would be a grave danger.

*Id.* ¶ 3. This statement does little to excuse her failure. To the contrary, it supports the Court's conclusion that she was aware that the service on Spota at the District Attorney's Office was improper.

With respect to the Town defendants, Tooker asserts:

> The Southampton clerk told the server that they are the agency who takes legal papers for Town employees, no other agency would accept service in the town.
>
> Also, there is no way for us to ever have a police officer's personal address. If they are lying about coming to my home, what would they say if I went to their home, I probably would have gotten killed. So, service is valid because the clerk said she accepts service for all defendants.

*Id.* ¶¶ 11-12. Tooker's comment that she attempted service on the Town defendants at

11

other "agencies" does not ring true given the fact that the summonses were not even prepared until January 10, 2018. In addition, even if her process server was advised that the Town Clerk could accept service for "Town employees" that does not amount to good cause. It is well-settled that the mistaken belief of a professional process server that service was proper is not good cause under Rule 4(m). *See Fowler*, 2015 WL 9462097, at *5 (citing *Yaxin Jing v. Angel Tips, Inc.*, No. 11-cv-5073, 2013 WL 950585, at *3 (E.D.N.Y Mar. 11, 2013)).

There is also no question that Spota and the individual Town defendants will be prejudiced if they are required to defend claims beyond the applicable statute of limitations. Indeed, courts in this Circuit have repeatedly held that that prejudice "arises from the necessity of defending an action after both the original service period and the statute of limitations have passed before service." *Id.* (collecting cases). Although, in this case, it is likely that some or all the defendants had notice of the complaint, the arrest at issue took place over four years ago and the factual allegations set forth in the complaint date back to 1999. Finally, it is important to note that the defendants did not attempt to conceal the defect in service. *See id.* (citing *Demott v. Bacilious*, No. 11-cv-6966, 2012 WL 601074, at *8 (S.D.N.Y. 2008)). Indeed, the opposite appears to be true with respect to the County. By her own account, Tooker was advised that the DA could not accept service for Spota. Nonetheless, the defendants were not required to advise Tooker that service was defective. *Id*. ("It is not 'the role of the Court or an attorney on the case to alert a represented plaintiff about the defects in service.'") (citing *Carl v. City of Yonkers*, 348 Fed. App'x 599, 601 (2d Cir. 2009) (finding "no rules that would apply in this case that require that a plaintiff be

12

notified of failure to properly serve defendants"). Accordingly, the Court finds that factors in this case weigh in favor of dismissal notwithstanding the fact that the dismissal will effectively be a dismissal with prejudice. Therefore, the undersigned respectfully recommends that the motions to dismiss of Spota, Pierce, Giambone, Spencer, Kalb and Glogg be granted.

### B. Merits of the Complaint

Given the above determination, the Court need only address the merits of the claims asserted against the Town of Southampton.[4] Nonetheless, for the sake of completeness, a few points regarding the merits of the plaintiff's claims are worth noting.

*1. Rule 12(b)(6) Standards*

In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *See Swiatkowski v. Citibank*, 745 F. Supp. 2d 150, 162 (E.D.N.Y. 2010), *aff'd,* 446 F. App'x 360 (2d Cir. 2011) (citing *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir.2010)). The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), in which the court set forth a two-pronged approach to be utilized in analyzing a motion to dismiss. District courts are to first "identify [ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. at 679. Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Second, if a complaint contains "well-pleaded factual

---

[4] In the caption, Tooker has separately named Spota in his individual and official capacity and the "Suffolk County District Attorney." However, Spota was the District Attorney during the relevant time period and there is nothing to suggest that his successor had any role in the underlying events. Accordingly, to the extent Tooker intended to assert a claim against Suffolk County DA other than Spota, the undersigned recommends that those claims be dismissed.

allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a [d]efendant has acted unlawfully." *Id*. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007) (internal citations omitted)).

Where, as here, the complaint was filed by a *pro se* litigant, the court must construe the complaint liberally and interpret the complaint "to raise the strongest arguments they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006). However, a *pro se* complaint must state a plausible claim for relief, *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013), and mere conclusions of law unsupported by factual averments need not be accepted, *Klos v. Bligh*, No. 13–CV–5449, 2014 WL 3778993, at *5 (E.D.N.Y. July 31, 2014). Lastly, "'[i]t is well-settled that, in considering a motion to dismiss, the Court is entitled to take judicial notice of documents integral to or referred to in the complaint, as well as documents filed in other courts and other public records'" *Craig*, 2015 WL 171234, at *1 n.3 (quoting *Reyes v. Fairfield Props.*, 661 F. Supp. 2d 249, 255 n.1 (E.D.N.Y. 2009)).

2. *Analysis*

In the complaint, Tooker broadly asserts that her rights protected by the First, Fourth, Fifth and Fourteenth Amendments to the Constitution have been violated. Specifically, she alleges that she has been deprived of the following:

> Freedom from unreasonable seizure of our person including, excess use force, sexual assault Freedom from unreasonable search and seizure [;]
>
> Freedom from arrest without probable cause [;]
>
> Freedom from imprisonment at being wrongful detention without good faith

14

> reasonable suspicion or legal justification of which plaintiff was aware and to which I did not consent [;]
>
> Freedom from the launching of false charges against her by work with officers [;]
>
> Freedom from malicious prosecution by officers and the prosecution, ultimately terminated in plaintiffs favor which was based on information or complaints provided by law enforcement with malice and without probable cause and false statements [;]
>
> Freedom from deprivation of liberty without due process of law [;]
>
> [F]reedom from denial of equal protection and immunities under the laws [; and]
>
> Freedom from the deliberate indifference to plaintiff's serious medical condition and did not provide medical assistance.

ECF No.1. Despite the inclusion of multiple grounds for her Section 1983 lawsuit and the assertion of several state law causes of action, the crux of the plaintiff's claims are her false arrest/imprisonment, malicious prosecution and deliberate indifference to a serious medical condition claim. To prevail on a Section 1983 claim, a plaintiff must show: (1) the deprivation of any rights, privileges, or immunities secured by the Constitution and its laws; (2) by a person acting under the color of state law. 42 U.S.C. §1983. In this case, there is no dispute that the defendants were all acting under the color of state law. Nonetheless, the claims must fail.

   a. *Town of Southampton*

To begin with, the complaint is devoid of any allegations that would support a cause of action against Southampton.[5] A municipal body may not be held liable under Section 1983 for the unconstitutional acts of its employees absent allegations that such

---

[5] The Town defendants have made the same argument with respect to the Southampton Police Department. The Police Department has not been specifically named as a defendant in this lawsuit. Nonetheless, the Court agrees that to the extent Tooker has asserted claims against the individual Southampton Police Officers in their official capacities, those claims would also fail as against the Police Department under *Monell*.

acts are attributable to a municipal custom, policy or practice. *See Monell v. Dep't of Social Servs. of the City of N.Y.*, 436 U.S. 658, 690-91 (1978). To establish the existence of a municipal policy or custom, a plaintiff must allege:

> (1) the existence of a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision making authority, which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of the policymaking officials; or (4) a failure by policymakers to properly train or supervise their subordinates, amounting to 'deliberate indifference' to the rights of those who come in contact with the municipal employees.

*Walker v. City of New York*, 63 F. Supp. 3d 301, 311 (E.D.N.Y. 2014) (citation and internal quotation marks omitted). In other words, "[u]nder *Monell*, a municipality may not be held liable under § 1983 simply for the isolated unconstitutional acts of its employees." *Curry v. City of Syracuse*, 316 F.3d 324, 330 (2d Cir. 2003).

In this case, Tooker has not alleged any link between the actions of the individual Town defendants and a policy or custom in place in Southampton. In fact, it is clear from the complaint that her arrest did not occur because of a policy. By her own account, she was arrested because "a [select group of] Southampton police officers were assisting a drug and prostitution ring at [her] property" and targeted her because she was a whistleblower. Accordingly, the Court also respectfully recommends that the case be dismissed against Southampton.

   b. *Additional Flaws in the Complaint*

As previously stated, while the undersigned need not address the merits of the plaintiff's claims, there are a few points worth noting for the sake of completeness.[6]   First, even if Spota

---

[6] The undersigned will not address every unsupported claim raised by the plaintiff in her complaint. Rather, the Court has chosen to highlight the flaws in the causes of action that it has interpreted to be the crux of Tooker's claims.

16

had been properly served, Spota would have been protected from liability by prosecutorial immunity. *See Shmueli v. City of New York*, 424 F.3d 231, 236 (2d Cir. 2005) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 96 S. Ct. 984 (1976) ("It is by now well established that a state prosecuting attorney who acted within the scope of his duties in initiating and pursuing a criminal prosecution is immune from a civil suit for damages under §1983."). Indeed, prosecutors are "absolutely immune from liability under § 1983 for acts within the scope of their duties in initiating and pursuing a criminal prosecution." *Pinaud v. County of Suffolk*, 52 F.3d 1139 (2d Cir. 1995). Tooker's only claim with respect to Spota is that he "chose to . . . prosecute her for almost 2 years" despite her belief that everyone knew "the arrest was false, that the warrant was a fraud, and that there [was] no way that [she] could be charged with resisting arrest." ECF No. 1. In addition, the claims asserted against Spota in his official capacity are barred by the Eleventh Amendment. *Ying Jing Gan v. City of New York*, 996 F.2d 522, 536 (2d Cir. 1993) (when a district attorney decides whether to prosecute, he or she is representing the State not the county and is, thus, entitled to invoke Eleventh Amendment immunity).

Second, "[t]he existence of probable cause to arrest constitutes justification and 'is a complete defense to an action for false arrest,' whether that action is brought under state law or under § 1983." *Jenkins v. City of New York*, 478 F.3d 76, 84–85 (2d Cir. 2007) (citing *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)). Tooker alleges, in the complaint, that "[the defendants] told [her she] was being arrested for a bench warrant that they claim was signed on or about August 2014." *See Johnson v. Dobry*, 660 Fed. Appx. 69, 71 (2d Cir. 2016) (probable cause to arrest is presumed when based upon a facially valid warrant). She also alleges that on the day she was arraigned, she told Judge Wilson that she had settled the code violations for $8,000 but Judge Wilson had been presented with information indicating that Tooker owed $14,250. Moreover, although Tooker purports to assert false arrest and false imprisonment as

17

two independent causes of action, "false arrest is considered a kind of false imprisonment, and the claims are analyzed in [an] identical fashion." *Mitchell v. Home*, 377 F. Supp. 2d 361, 371 (S.D.N.Y. 2005). Finally, the existence of probable cause is also complete defense to her malicious prosecution claim. *See Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003).

In addition, the entire substance of Tooker's claim that the defendants were deliberately indifferent to her serious medical needs is set forth in three sentences. Specifically, she alleges that "[She] requested medical assistance and they refused to give it to me," "I couldn't walk and they dragged me into the jail cell" and "I immediately got medical attention and documented all wounds from the attack of the defendant police officers." She does not describe the nature of her injury, how it occurred or what treatment she received following her release. The court is simply unable to evaluate whether her injuries were serious enough to warrant comment or treatment or to assess whether the actions of the defendants in relation to those alleged injuries were something more than negligent. *See Mills v. Fenger*, 216 Fed. Appx. 7, 10 (2d Cir. 2006). Accordingly, these conclusory allegations are far from sufficient to support her claim. Thus, for all of the reasons outlined in this report, the undersigned recommends that both motions be granted in their entirety.

### C. Filing Injunction

The undersigned believes that Tooker's frequent filings are detracting from the legitimate cases before the Court. In addition to the instant matter, Tooker has commenced 12 separate lawsuits in the District Court as follows:

| Case Name and Docket No. | Subject Matter | Disposition |
| --- | --- | --- |
| *In re: Marie Tooker (Debtor);* 07-CV-2078 (JFB) | Bankruptcy Appeal (8-04-83469) | Appeal Withdrawn by Tooker |
| *Tooker v. Town of Southampton et al.,* 10-CV-4752 (JS)(AKT) | 42 U.S.C. § 1983 – Civil Rights Act | Case Dismissed for Lack of Prosecution |

| | | |
|---|---|---|
| *Tooker et al v. Guerrera et al.,* 10-CV-5631 (JS) (ARL) | 42 U.S.C § 1981 – Civil Rights | Administratively Closed due to Ongoing Bankruptcy Proceeding |
| *Tooker v. Quest Ventures*; 11-CV-1797 (SJF) | Bankruptcy Appeal (8-10-79529) | Case Dismissed – Failure to File Form with Second Circuit |
| *Tooker v. Judge Patrick Leis II;* 14-CV-5309 (JS) (ARL) | 42 U.S.C. § 1983 – Civil Rights Act | Case *Sua Sponte* Dismissed – Failure to State a Claim |
| *Tooker v. Guerrera et al;* 15-2430 (JS)(ARL) | 18 U.S.C. § 1961 - RICO | Case Dismissed Following Motion Practice – Failure to State a Claim |
| *Tooker v. Quest Ventures, Ltd.,* 16-CV-7070 (JFB) | Bankruptcy Appeal (8-15-75499) | Appeal Voluntarily Dismissed |
| *Tooker v. Quest Ventures, Ltd. et al.,* 17-4589 (JS) | Bankruptcy Appeal (8-15-75499) | Appeal Denied |
| *Tooker et al v. Quest Ventures, Ltd. et al.,* 18-6331(JS) | Bankruptcy Appeal (8-15-75499) | Pending |
| *Tooker et al v. Quest Ventures, Ltd. et al.,* 18-6644 (JS) | Bankruptcy Appeal (8-15-75499) | Pending – Consolidated with 18-6644 |
| *Tooker v. Grossman*; 18-7164 (JS)(ARL) | 42 U.S.C. § 1983 – Civil Rights Act | Case *Sua Sponte* Dismissed – Failure to State a Claim |
| *Tooker et al v. Quest Ventures, Ltd.* 19-CV-64 | Bankruptcy Appeal (8-15-75499) | Pending |

To date, Tooker has not successfully litigated a single case. In addition, as suggested by the above chart, Tooker has also been involved in four separate bankruptcy proceedings and there is a suggestion in some of the filings that she has attempted to litigate these issues in state court. "'The district courts have the power and the obligation to protect the public and the efficient administration of justice from individuals who have a history of litigation entailing vexation, harassment and needless expense to other parties and an unnecessary burden on the courts and

19

their supporting personnel.'" *Mallgren v. Burkholder*, 52 F. Supp. 3d 490, 497–98 (E.D.N.Y. 2014) (citing *Lau v. Meddaugh*, 229 F.3d 121, 123 (2d Cir.2000) (internal quotations and citations omitted)).   Tooker has demonstrated a history of filing duplicative and frivolous lawsuits, and therefore, the Court may impose sanctions, including restrictions on future access to the judicial system without first seeking leave of the Court.   Accordingly, the undersigned recommends that Tooker be directed to show cause, in writing, as to why she should not be barred from filing future complaints without leave of a court.

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections.   Such objections shall be filed with the Clerk of the Court via ECF, except in the case of a party proceeding *pro se*.   *Pro se* Plaintiff Marie Guerrera Tooker must file her objections in writing with the Clerk of the Court within the prescribed time period noted above.   Any requests for an extension of time for filing objections must be directed to Judge Seybert prior to the expiration of the 14-day period for filing objections.   Failure to file objections within this period waives the right to appeal the District Court's Order.   *See* 28 U.S.C. § 636(b)(1); Fed R. Civ. P 72; *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.,* 596 F.3d 84, 92 (2d Cir. 2010); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchant's Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated:  Central Islip, New York
        January 23, 2019

                                        _____/s/_____
                                        ARLENE R. LINDSAY
                                        United States Magistrate Judge